IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Keith Sox, | ) | |
| | ) | |
| Plaintiff, | ) | C/A NO. 3:05-1738-CMC |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| The Pepsi Bottling Group, Inc., | ) | |
| Long Term Disability Plan, | ) | |
| | ) | |
| Defendant. | ) | |

Through this action, Plaintiff, Keith Sox ("Sox") seeks a determination that Defendant, the Pepsi Bottling Group Long Term Disability Plan ("Plan"), abused its discretion when it terminated his long term disability benefits effective November 1, 2004. The matter is currently before the court for a determination on the merits based on the parties' written submissions. *See* Dkt No. 13 & 14 (agreeing to disposition on the written record).

The parties filed cross-memoranda in support of judgment on March 8, 2006, as well as responsive memoranda on March 13 and 14, 2006. Based on those submissions, the court remanded for further specified proceedings on April 20, 2006. Dkt No. 22. Upon completion of those proceedings, the parties filed a status report, followed by supplemental cross-memoranda in support of judgment. Dkt No. 23 & 26-28. The matter is now before the court for final resolution on the merits.

For the reasons set forth below, the court finds that the Plan did not abuse its discretion in denying benefits. The court, therefore, finds that Defendant is entitled to judgment in its favor on Sox's claim for benefits. The court declines, however, to award attorneys' fees to Defendant.

## APPLICABLE LAW AND STANDARD OF REVIEW

It is undisputed that the benefits at issue are provided under an employee benefit plan governed by the Employee Retirement Income and Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Sox's claim for benefits is, therefore, pursued solely under 29 U.S.C. § 1132(a)(1)(B).

It is also undisputed that the challenged decision is subject to an abuse of discretion standard of review. Under this standard, the court is required to uphold the administrator's decision if it is reasonable, even if the court would have come to a different conclusion had it considered the matter independently. *See Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997).

A decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* at 232 (quoting *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997)). Numerous factors are considered in "determining the reasonableness of a fiduciary's discretionary decision." *Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2001). These include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.*

## DECISION OF THE COURT

After examining the administrative record ("AR" and "SAR"[1]), joint stipulation, and parties'

---

[1] The pre-remand Administrative Record was filed as Dkt No. 16 and is referred to herein as "AR" followed by the bates number of the relevant page. The post-remand or "Supplemental" Administrative Record was filed as Dkt No. 27 and is referred to herein as "SAR" followed by the bates number of the relevant page.

2

memoranda, the court enters the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any findings of fact represent conclusions of law, or vice-versa, they shall be so regarded.

## FINDINGS OF FACT

**History of Claim**

1.      The Plaintiff, Keith Sox, is a 39 year old man who resides in West Columbia, South Carolina.

2.      Until November of 2002, Sox was employed with Pepsi Bottling Group, Inc. ("PBG") as an auto painter. While employed with PBG, Sox was a participant in the Plan.

3.      Sox was injured in 2002. That injury precluded him from continuing in his occupation as an auto painter.

4.      Sox filed a claim for benefits with the Plan asserting that he was disabled from his "own occupation." The Plan found him to be so disabled and paid benefits under the Plan for a period of twenty-four (24) months, the full period covered by the "own occupation" definition of disability.

5.      The Plan uses the services of third-party administrator VPA, Inc., ("VPA") to review claims for disability benefits. On July 24, 2004, VPA advised Sox that his entitlement to benefits under the "own occupation" definition of disability would expire on November 22, 2004, and that any further entitlement would require proof that he was disabled under the "any occupation" standard. VPA invited Sox to submit support for any claim of continued disability.

6.      Sox submitted additional support for his claim as discussed below ("Evidence of Disability"). The Plan also obtained an evaluation from James F. Bethea, M.D. ("Dr. Bethea"), a

non-treating, independent-review physician.

7. Based on review of these materials, VPA concluded that Sox did not meet the following definition of disability which is applicable after the first twenty-four months:

> (3) Unable to Engage in a Reasonable Occupation: To the extent the Participant's continuous Period of Disability exceeds 24 months, the Participant is unable to engage in any Reasonable Occupation;
>
> (i) For which he is, or may reasonably become qualified by education, training or experience, and
>
> (ii) That is available to the Participant in his geographic area as determined by the Claims Administrator.

AR pp. 238-29.

8. The Plan, therefore, terminated Sox's disability benefits effective November 23, 2004.

9. Sox appealed the termination of his benefits (denial of benefits under the "any occupation" disability definition), exhausting all available administrative remedies.

**Evidence of Disability**

10. Among the materials considered by VPA was a January 28, 2004 evaluation conducted at the request of the Plan (or VPA) by Dr. Bethea, a non-treating independent reviewing physician. AR p. 163 (VPA letter), AR p. 135 (Dr. Bethea report). This report, completed during a time when the "own occupation" standard applied, stated that Sox suffers from "L3-4 posterior disc bulge as well as one at L4, L5, and S1." AR p. 135. This diagnosis was based on an MRI scan completed on November 2, 2002. Dr. Bethea concluded:

> DISPOSITION: At this time, I think the patient has reached maximum medical improvement and I think a pain management program would have nothing to offer him.
>
> As far as work restrictions, I think that he can lift, carry, push and pull 20 lbs.

4

> frequently and 40 lbs. occasionally. He is allowed occasional bending, squatting and kneeling. He cannot stand or walk constantly but must limit those activities to two hours at a time. In fact, he may need to change position from time to time. He should be able to reach above his shoulder and reach outward occasionally. Climbing, twisting and turning can be done occasionally.

*Id.*[2] Dr. Bethea, at that time, rated Sox with a "15% permanent physical impairment of the lumbar spine." *Id.*

11. On November 15, 2004, Dr. Bethea updated his opinion noting the same diagnosis. AR pp. 113-14 (noting impression of lumbar spondylosis and degenerative disc disease). He concluded:

> DISPOSITION: The diagnosis is indicated by the MRI scan. *The patient certainly gives a long history of lower back pain which interferes with any attempt to perform any type of work.* I have enclosed a copy of his physical capacity evaluation form. His medications are listed in the above report and are needed because of his continuing lower back pain.
>
> *On a scale of 1-10, I would rate his condition as 4/10.*

AR pp. 113-114 (emphasis added).

12. On the referenced Physical Capacity Evaluation ("PCE") form, Dr. Bethea indicated that Sox could engage in up to four hours per day of each of four activities: standing, walking, sitting, and driving, with the further limitation that Sox could sit for no more than two hours at a time and engage in the other three activities for no more than one hour at a time. He also indicated that Sox could not work overtime. AR p. 116. Dr. Bethea has since clarified that while Sox can engage in any of the four activities for up to four hours per day, he would be limited to a total of an eight

---

[2] At the time initially prepared, this evaluation was apparently sufficient to support a finding that Plaintiff was disabled from his "own occupation." There is, in any event, no indication that the specific findings were challenged at the time.

hour work day . SAR p. 4.[3]

13.     Dr. Bethea also provided a November 15, 2004 addendum which addressed the degree to which Sox's condition may have resulted from or aggravated a preexisting condition. AR p. 120. Causation is not, however, at issue in this action.

14.     After receiving Dr. Bethea's report, VPA requested a vocational analysis ("VA"), providing the following information to the vocational examiner.

> Keith E. Sox is a 37 year old male, diagnosed with lumbar spondylosis, degenerative disc disease, and lumbar radiculopathy. At the time of his disability, he was working as a Paint and Body Repair[man]. He is currently living in West Columbia, SC and has a high school education. The medical records indicate the following work restrictions:
>
> • Lift/Carry: up to 25 [pounds] frequently
> • Lift/Carry: up to 50 [pounds] occasionally
> • Stand: 1 hour at a time up to 4 hours/day
> • Walk: 1 hour at a time, up to 4 hours/day
> • Sit: 2 hours at a time, up to 4 hours/day
> • Drive: 1 hour at a time, up to 4 hours/day
> • Able to occasionally bend, squat and crawl

AR pp. 111-12.

15.     The resulting VA is dated December 30, 2004. AR pp. 103-06. It recites the above limitations and, in addition, that Sox could:

> reach above shoulder level frequently; perform continuous simple grasping, pushing and pulling and fine manipulation bilaterally; can use both feet for repetitive action;

---

[3] In his original memorandum, Sox argued that Dr. Bethea's intent was crucial to understanding the case. Specifically, Sox suggested that "it is not clear whether Dr. Bethea believed that if the Plaintiff was only required to stand (and not walk for instance) that he could do so for up to four (4) hours in a particular day or, conversely, whether Dr. Bethea believed that the Plaintiff could stand and walk and sit and drive combined for up to sixteen (16) hours a day if the Plaintiff did not exceed four (4) hours total at any one particular activity." Dkt No. 18 at 6. The matter was remanded, in part, to allow Dr. Bethea to clarify his meaning. That clarification, which is also the most consistent with the original report when read as a whole, is set forth in the text above.

>is not restricted by environmental factors; does not need a workplace accommodation; *and cannot work overtime*.

AR p. 104 (emphasis added). [4]

16. The vocational examiner concluded that Sox could perform the duties necessary to work as a painting machine operator, parts clerk, equipment rental clerk, or parts deliverer. AR pp 104-06.

17. VPA issued its initial denial letter on January 28, 2005, stating that Dr. Bethea had determined that Sox was capable of the following:

>• Lifting, carrying and pushing up to 40 pounds (20 pounds occasionally)
>• Occasionally bend, squat and kneel
>• Stand up to two hours per day
>• Walk up to two hours per day
>• Occasionally reach outward and above your shoulder
>• Occasionally climb, twist and turn

AR p. 95.[5] VPA concluded that Sox's ability to work as a painting machine operator disqualified him from receiving benefits because this occupation would provide sixty percent of Sox's pre-injury income. VPA, therefore, advised Sox that his benefits were terminated effective November 23, 2004. *Id.*

17. Sox was invited to and did appeal. In support of his claim, Sox submitted, *inter alia*,

---

[4] The VA was provided without the benefit of Dr. Bethea's post-remand clarification. The statement that Sox "cannot work overtime" (italicized in the quotation in the text), however, confirms that the person conducting the VA read Dr. Bethea's report to limit Sox to an eight-hour workday.

[5] The statement in this letter that Sox is able to stand or walk for a total of two hours per day differs from the hours of the same activities allowed by Dr. Bethea's report and used for purposes of the VA (a total of four hours for each activity per day). There is, however, no indication that any error in the statement in VPA's letter was detrimental to Sox or influenced the ultimate decision.

the affidavit[6] of Gal Margalit, M.D., who performed an independent medical examination of Plaintiff on December 4, 2004. AR pp. 5-8; SAR pp. 37-39. This affidavit states:

> 1.   I am a medical doctor licensed to practice in the state of South Carolina and that I do practice in West Columbia, South Carolina. I am a board certified [sic][7]. I have been asked by my patient,[[8] Mr. Keith Sox, to provide this statement to be used in conjunction with his quest for disability insurance benefits. This statement is intended solely for the foregoing purpose and no other and this statement is based upon my medical education and experience and based upon my specific knowledge of Mr. Sox's problems and medical treatment history.
>
> 2.   . . . Mr. Sox's medical records are attached hereto as exhibit A. I respectfully refer the reader to those records for the specifics of his medical problems and treatment history. Mr. Sox suffers from spinal stenosis, bulging disks at L3-4, L4-5, and L5-S1, and radiculopathy.
>
> 3.   Subjectively Mr. Sox tells me that he suffers from chronic pain and discomfort in his back that radiates down into his legs. Also, he tells me that he suffers from profound fatigue. Mr. Sox also tells me that he has difficulty sleeping. Mr. Sox states that he is unable to sit, stand, or walk continuously for extended periods of time without having to change positions frequently. The foregoing description describes him on a normal day. On a bad day he may be "laid up" for the whole day or for several days. Mr. Sox's subjective symptoms are consistent with his objectively diagnosed physical problems.
>
> 4.   Mr. Sox is currently taking the following prescription medications Bextra. He is also taking Advil and Tylenol on a daily basis.
>
> 5. It is my understanding from Mr. Sox that his disability insurer has terminated payment of benefits to him asserting that there is some job that he is capable of performing on a full-time and consistent basis.

---

[6] The parties and this court refer to this document as an affidavit. It is, however, unsworn and undated. *See* AR pp. 5-8; SAR pp. 33-36. Thus, it may more accurately be treated only as a signed statement.

[7] Dr. Margalit indicates no board certification. Defendant has asserted and Sox has not challenged the assertion that Dr. Margalit is a general practitioner.

[8] Although Dr. Margalit refers to Sox as his "patient," it appears that Sox consulted Dr. Margalit only for purposes of obtaining an evaluation in support of his pursuit of disability benefits.

* * *

> 7.  It is my understanding from Mr. Sox that he has a high school education. It is further my understanding from Mr. Sox that he does not have any special training, education, or experience to perform a sedentary job on a full-time and consistent basis and that the only job that he has performed his entire adult life was his prior job with Pepsi as an auto-painter.
>
> 8.  It is my understanding that Mr. Sox voluntarily underwent an Independent Medical Evaluation. It is my understanding that his insurer contends that the results of the Independent Medical Evaluation demonstrate that Mr. Sox can work at a full-time job on a consistent and continuous basis. With all due respect to the insurer, I think that the insurer has misconstrued the nature of Mr. Sox's condition and problems. *The nature of Mr. Sox's problems are such that he has good days and bad days. On a good day Mr. Sox can perform as he did during the Independent Medical Evaluation. However, if he does exert himself to that extent then it is likely that he will need several days of complete inactivity to recover. Mr. Sox's problems do consist of real medical conditions and subjective symptoms caused thereby. The nature of those problems are such that it is not reasonable to expect that a person suffering from Mr. Sox's conditions could be able to work on a full-time, consistent, or continuous basis at any occupation.*
>
> 9.  *It is my opinion, based upon my medical education and experience and based upon my specific knowledge of Mr. Sox's problems and treatment history that he is and has been completely and totally disabled from performing any job on a full-time basis, consistent with the definition of disability above. I render my opinion based upon the cumulative effect of Mr. Sox's above described physical problems and the subjective symptoms he suffers.* It is my opinion that he has been so disabled since he ceased working in 2002 and that he will remain so indefinitely into the future.

AR pp. 5-8 (emphasis added).

> 18.  Dr. Margalit's records were also submitted which contain the following

December 4, 2004, notations:

> ASSESSMENT: This is an evaluation of a patient who was examined and found to be *fully disabled in April 2004.* He is here for the purpose of reevaluation following an application for Social Security disability and also because of stoppage of his long term disability on the basis that he should be able to return to work.
>
> RECOMMENDATION: There is *no evidence on my examination that this patient is able to return to work now or in the foreseeable 12 months in any form of gainful employment*. If anything, his subjective pain level has increased. He also has some

new complaints of right dorsal spine pain and pain in his right lower quadrant which needs to be elucidated and worked up if it continues or worsens.

I have told the patient that he can remain on Bextra 10 mg daily and alternate it with Tylenol for his pain. He tries to do home exercises as best he can. I have recommended that he continue to do this as much as tolerated.

AR pp. 11-12 (emphasis added).[9]

   19.   In his earlier, April 3, 2004, office note, Dr. Margalit wrote:

ASSESSMENT: Status post on-the-job injury on 04/30/02 while working for PepsiCo with aggravation of spinal stenosis which was a pre-existing condition to his job, symptomatic bulging disks at L3-4, L4-5, and L5-S1 with posterior tears allowing extravagating of dyes seen on diskogram, failure of epidural hydrocortisone shots times two and facet joint blocks times two at the Chronic Pain Center and clinical evidence of lumbar radiculopathy bilaterally, perhaps somewhat worse on the right than on the left.

RECOMMENDATION: *In my view, the patient is unable to return to his previous job or any other occupation now and in the foreseeable future for at least the next 12 months.* This patient has reached maximum medical improvement. His medical care has been excellent.

I have given him a prescription for Skelaxin 800 mg. TID, #90, and Celebrex 200 mg PO BID, #60, in lieu of the Advil that he is taking. He has sustained a physical impairment function loss of 35-40% to his back and 10-15% to his right lower extremity and 10% to his left lower extremity on the basis of his on-the-job injury. I will be pleased to see him and treat him in the future on a PRN basis. *In my view, he needs to apply for Social Security disability on the basis of his medical condition as he is totally disabled from any form of gainful employment now and in the foreseeable future.*

AR p. 155 (emphasis added).[10]

   20.   Sox also submitted an affidavit signed and sworn by Johnny Smith, M.D., his family

---

   [9] The statement that Sox was found disabled in April 2004 is technically correct. However, that disability determination was based on an "own occupation" disability standard. Dr. Margalit does not acknowledge the significant difference between such a determination and an "any occupation" standard, although he does conclude that Sox cannot work "in any form of gainful employment."

   [10] Sox did apply for but was denied Social Security Benefits. *See infra* ¶ 24.

10

physician. AR pp. 19-22. Dr. Smith's affidavit was virtually identical to that provided by Dr. Margalit, except for providing Dr. Smith's board certification ("family/general practitioner") where Dr. Margalit did not. AR p. 19. Medical records from Dr. Smith as well as two other physicians were also submitted.

    21. Finally, Sox submitted his own affidavit which states, inter alia:

    7. The pain and discomfort which I suffer is completely distracting and is unbearable on most days. I suffer from chronic pain in my back that radiates down into my legs. Also, because of the profound fatigue which plagues me I cannot even perform those tasks which I can do for any extended period of time. My inability to sleep at night also contributes to my severe fatigue. When I get up in the morning I begin to deal with my pain and when I go to bed in the evening I am still dealing with it. I deal with the pain and discomfort all day, every day. I cannot sit, stand, or walk for any period of time without having to change positions because of the severe pain from which I suffer in my back and legs.

    8. My lawyer has asked me to describe a typical day in my own handwriting and that is attached hereto as exhibit A. Exhibit A describes a typical day. On a bad day I may be completely incapacitated and on a good day I may be able to do a little something special, but usually if I do make an effort to conduct more activity than on a usual day I will end up paying for it the next day.

    9. I am currently taking the prescription medication Bextra. I also take Tylenol and Advil on a daily basis to alleviate some of the pain I suffer. I have also undergone extensive physical therapy.

    10. My education history is that I have a high school education. I do not have any special training, education, or experience to do any sedentary job on a full-time and consistent basis. The only job that I have performed my entire adult life was my prior job with Pepsi as a auto-painter,

    11. It is my understanding that VPA, Inc. contends that I can work on a full-time or continuous basis based upon a Independent Medical Evaluation that I underwent. I did voluntarily go to a Independent Medical Evaluation and I believe I performed to the best of my ability. I went to the Independent Medical Evaluation because I was asked to. I tried to perform the test as instructed, but I do not enjoy subjecting myself to extreme pain and discomfort. I do not think the Independent Medical Evaluation is reflective of my ability to work in any way. During the Independent Medical Evaluation I was only present with the evaluator for approximately several hours. I

>did what he asked me to do to the best of my ability. However, even performing the activities that I could do, when I got home I was essentially "beat" and I took a nap. I was still sore the next day and I did nothing the next day. The Independent Medical Evaluation measured what I could do for the very brief window of time that I was present with the evaluator. I can assure the reader that I have good days and bad days. On a good day I can perform for a very brief period, as I did with the evaluator. On a bad day I am essentially incapacitated. I had a bad day the day after the Independent Medical Evaluation. I believe my doctor will verify that, as a result of my condition, one does suffer from severe and frequent fatigue. There is absolutely no way that I could work at my prior job or a full-time position of any sort on a consistent or continuous basis.

AR pp. 27-30.

22. The Plan also had available documents which Plaintiff had submitted in support of his earlier claim for disability benefits under the "own occupation" definition. These included medical records from neurologists, Brett C. Gunter, M.D., and Steven B. Storick, M.D.. *See*, AR pp. 182-191 (records from December 2002 through April 2003) and p. 220 (January 2003 certification stating, based on December 13, 2002 examination, that Sox was disabled from work for at least three to six months). While these documents support the conclusion that Plaintiff was disabled, at least from his own occupation, in December 2002, they do not support any disability determination after April 2003. Neither do they address disability under an "any occupation" standard.

23. The Plan also had available documentation from Evan F. Ekman, M.D., an orthopaedic surgeon. These materials, from November and December 2002, were apparently submitted by Sox in support of his earlier ("own occupation") disability claim. They indicate that Dr. Ekman recommended a functional capacity evaluation ("FCE") which Sox did not obtain. See AR p. 73-74. There is no evidence that Sox subsequently sought an FCE. He did not submit any post-2002 documentation from Dr. Ekman in support of his later claim under the "any occupation"

12

standard. AR pp. 73-74.

24. Sox submitted a claim for Social Security disability benefits. That claim was denied. AR pp. 158, 166-68 & 171.

**Final Pre-Suit Denial**

25. The Plan issued its final denial letter, by and through VPA, on June 2, 2005. AR pp. 1-3. This letter relied expressly upon the November 15, 2004 report of Dr. Bethea and the VA which was based on that report. It referred to but declined to accept the opinion of Dr. Margalit. *Id.* This litigation followed.

**Litigation and Procedures on Remand**

26. This litigation followed the usual course in this district, with exchange of documents, mediation, and cross-memoranda in support of judgment on the record. Dkt Nos. 1-21. After the court's initial review of the cross memoranda and with the consent of the parties, the court remanded for further proceedings, allowing Sox to submit additional materials to the Plan "concerning his November 1, 2004 medical condition/restrictions/limitations," and requiring VPA, on behalf of the Plan, to resubmit the matter to Dr. Bethea to consider any such additional materials and to answer any "questions VPA, Inc. wants answered regarding Plaintiff's medical condition/restrictions/limitations as of November 1, 2004." Dkt No. 22.

27. These procedures were followed, resulting in VPA's issuance of a renewed denial of benefits on August 10, 2006.[11] Supplemental briefs were filed thereafter. Dkt No. 23.

28. The August 10, 2006 renewed denial rested, in large measure, on Dr. Bethea's July

---

[11] As the Plan notes in its post-remand memorandum, Sox did not submit any new evidence. but did resubmit selected evidence. This evidence included the affidavit of Dr. Margalit, who is neither an orthopedist nor neurologist, and which relies heavily on Sox's subjective reports. *See* Dkt No. 26.

13

31, 2006 letter in which he states that he has reviewed the affidavits of Sox and Dr. Margalit, as well as Dr. Margalit's December 4, 2004 medical records, and a letter written by Sox's attorney. Dr. Bethea stated that this information did not change his November 15, 2004 opinion which he clarified as follows: "[Sox] can perform each of [the four listed activities] a total of four hours during a normal workday, but he is not to exceed eight hours [per] workday." Dr. Bethea further stated that he did not see a need to reexamine Sox. Dkt No. 27 at 4-5.

## CONCLUSIONS OF LAW

29.     Although there is evidence which might support an award of long-term disability benefits, that evidence is based, in significant part, on Sox's subjective claims as to the degree of his disability. Most critically, the affidavits submitted by Doctors Margalit and Smith might reasonably be discounted both because of the inherent and acknowledged reliance on Sox's subjective complaints and because their near identical nature suggests that they were not prepared by the physicians themselves. Further, neither of these physicians is an orthopaedic surgeon or neurologist, the two specialties most relevant to Sox's condition.

30.     Sox's failure to submit to an FCE, or to provide updated opinions from Doctors Gunter, Storick, or Ekman, or other physicians specializing in orthopedics or neurology is also notable. Orthopedics and neurology are the specialties most germane to Plaintiff's injury. Moreover, while the records which are available from these physicians support the conclusion that Plaintiff suffered some degree of disability, none are sufficient to suggest that Plaintiff was, at any time, unable to engage in "any occupation."

31.     The above evidence, therefore, suggests only that Plaintiff *might* be disabled under the any occupation standard. It does not compel such a determination.

32. The above evidence must be balanced against the results of Dr. Bethea's independent medical evaluation and the subsequent vocational evaluation which was based on that IME. Based on this balance, the court concludes that there was substantial evidence to support the Plan's determination that Sox is not disabled from "any occupation" as defined in the Plan.[12]

32. The court specifically finds sufficient evidence to support the conclusion that Dr. Bethea gave fair and reasonable consideration to Sox's claims of disabling pain. While Dr. Bethea did not agree that Sox suffered a degree of pain which would preclude him from working, he did acknowledge that Sox's pain interfered with and limited his ability to work. Thus, Sox's subjective complaints of pain were clearly considered.

33. The process itself was reasoned and principled, particularly in the use of an independent outside medical reviewer and vocational expert.

34. In light of the factual support for the ultimate conclusion, and the process followed in reaching it, the court concludes that the decision was consistent with the procedural and substantive requirements of ERISA.

35. The court finds the decisions in *Stup v. Unum Life Ins. Co. of America,* 390 F.3d 301, 307 (4th Cir. 2004), and *Donovan v. Eaton Corp., Long Term Disability Plan*, 2006 WL 2530393 (4th Cir. September 5, 2006), to be distinguishable for the reasons argued by Defendant in Dkt No. 28 at 5-7.

**FINDINGS AND CONCLUSIONS RELATIVE TO ATTORNEYS' FEES**

36. The parties are in clearly disparate positions regarding their ability to pay attorneys'

---

[12] While not determinative, it is also of some note that Sox was not found to be disabled under the similar definition applied by the Social Security Administration.

fees.

37.    While ultimately unsuccessful, Plaintiff's position was not unreasonable and he did gain the benefit of remand for limited further proceedings. Further, there is no evidence of bad faith. Neither is there any evidence that Sox engaged in litigation tactics which might have added unnecessarily to the expense of litigation.

38.    Under these circumstances, the court concludes that an award of attorneys' fees against Plaintiff is not warranted.

## CONCLUSION

For the reasons set forth above, the court directs entry of judgment in favor of Defendant but declines to award attorneys' fees.

IT IS SO ORDERED.

                 s/ Cameron McGowan Currie
                 CAMERON MCGOWAN CURRIE
                 UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 23, 2006

C:\temp\notesB0AA3C\05-1738soxvpepsi--meritsorder.wpd